UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PROFESSIONALS GUILD OF OHIO, *et al.*, | : : : | Case No. 1:14-cv-161 |
| Plaintiffs, | : : | Judge Timothy S. Black |
| vs. | : : : | |
| BUTLER COUNTY BOARD OF DEVELOPMENTAL DISABILITIES, *et al.*, | : : : : | |
| Defendants. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (Doc. 12)**

This civil action is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 12) and the parties' responsive memoranda. (Docs. 14, 15).

This lawsuit challenges a new drug and alcohol testing policy adopted by Defendant Butler County Board of Development Disabilities ("BCDD"). The policy provides that certain employees are subject to random (and other) drug and alcohol testing. (Doc. 12 at 2). The policy applies only to those BCDD employees who transport the developmentally disabled throughout the county, typically in 12-passenger vans. (*Id.*) Two of the Plaintiffs are a union and its local, who represent certain employees of Defendant BCDD. (*Id.*) The remaining nine Plaintiffs are individual employees of Defendant BCDD who are subject to the policy. (*Id.*) Plaintiffs have sued Defendant BCDD and its superintendent in both her individual and official capacities. (Doc. 1 at ¶ 27). Plaintiff's Amended Complaint alleges that ten employees have been tested pursuant to the policy.

(*Id.* at ¶¶ 64-65).

Plaintiffs bring two counts. Count I is for a violation of the Fourth Amendment. (*Id.* at ¶¶ 91-93). Count II includes state law claims of assault and battery, invasion of privacy, reputational damage, unlawful confinement, deprivation of collective bargaining rights, and wrongful discharge/discipline. (*Id.* at 94-95).

## I. FACTS AS ALLEGED BY THE PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the claims in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Defendant BCDD is a governmental entity created by statute. Ohio Rev. Code ("O.R.C.") Chapter 5126. It is run by a board of directors. O.R.C. §§ 5126.02, 5126.021. Defendant BCDD provides services to developmentally disabled residents of Butler County, Ohio. (Doc. 10 at ¶ 31); O.R.C. § 5126.05(A)(1)-(11). Thus, the individuals that Defendant BCDD serves have a "severe, chronic disability." Ohio Admin. Code ("O.A.C") § 5123:2- 1-02(C)(1)(a)-(e). As part of Defendant BCDD's services, BCDD employees transport the developmentally disabled to and from various services throughout the county. (Doc. 10 at ¶ 31). The transportation occurs in 12-passenger vans or smaller vehicles. (*Id*. at ¶ 47). Defendant Lisa Guliano is Defendant BCDD's superintendent. (*Id*. at ¶ 21). She is sued in both her individual and official capacities. (*Id.* at ¶ 27).

Plaintiffs are employees of Defendant BCDD.  (*Id.* at ¶¶ 8-16).  They are employed as either Habilitation Support Professionals ("HSP") or Customized Support Professionals ("CSP").  (*Id.*)  Employees in both positions are required to be able to transport the developmentally disabled, by driving them to various locations.  (*See id.* at 67-72).  They typically transport the developmentally disabled for over an hour per day. (*Id.* at ¶ 43).  Not only do these employees drive vans filled with the developmentally disabled, they also act as monitors and assistants on those vans.  (*Id.*)  For example, Habilitation Support Professionals also are required to assist individuals on and off the van, and in and out of facilities.  (*Id.* at 69).  Both positions are required to respond to behavior and medical emergencies that occur in the van.  (*See id*. at 67-72).  Finally, CSPs are also responsible for the "administration of medication, treatment and health related tasks to individuals."  (*Id.* at 70).  They are also expressly responsible for the safety of those individuals being transported.  (*Id*. at 71).  Plaintiffs Professionals Guild of Ohio and its Subdivision Council 7 (together "PGO") represent these two classes of employees.  (*Id.* at ¶ 7).

Defendant BCDD recently revised its drug and alcohol testing policy.  The policy now requires drug testing in several instances, including pre-employment, upon reasonable suspicion, post-accident, and randomly.  (*Id*. at ¶ 52).  Plaintiffs challenge only the random and post-accident tests. (*Id*. at ¶ 63).  As far as alcohol testing goes, the policy prohibits specified employees from reporting to work with a blood alcohol concentration of .02% or greater.  (*Id.* at 77).

3

Plaintiffs filed the Amended Complaint on April 14, 2014, alleging that several employees have been tested pursuant to this policy.  Plaintiffs' allege that Defendant BCDD and Defendant Guliano have violated their Fourth Amendment rights.  (*Id.* at ¶¶ 91-93).  Further, Plaintiffs allege assault and battery, invasion of privacy, reputational damage, unlawful confinement, deprivation of their collective bargaining rights and wrongful discharge/discipline.  (*Id.* at ¶¶ 94-95).

Defendants now move to dismiss all of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 12 at 5).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (*citing Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'[.]"  *Twombly*, 550 U.S. at 555 (*citing Papasan*

4

*v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and the Complaint shall be dismissed. *Id*. (*citing* Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

**A. Count I**

**1. Merits**

Alcohol and drug testing, absent suspicion, invades the privacy interests of employees and is a search and a seizure governed by the Fourth Amendment, which can only be justified if the employer has a "special need." *Skinner v. Railway Labor*

*Executives' Ass'n*, 489 U.S. 602, 618 (1989).[1]

The United States Supreme Court has set forth the standard to be used when analyzing suspicionless searches:

> [W]here a Fourth Amendment intrusion serves special government needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context.

*National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665-66 (1989). With respect to suspicionless drug and alcohol testing, a court balances the government's or public's interest in testing against the individual's privacy interest. *See*, *e.g.*, *Knox Cnty. Educ. Ass'n v. Knox Cnty. Bd. of Educ.*, 158 F.3d 361, 373 (6th Cir. 1998).

Employees that may be tested randomly and without suspicion consistent with the Constitution are those employees in "safety-sensitive" positions. *Crager v. Bd. of Educ. of Knott County*, 313 F. Supp. 2d 690, 702 (E.D. Ky. 2004). "Safety sensitive" positions are those positions that "involve discharge of duties fraught with risks of injury to others that even a momentary lapse of attention could have disastrous consequences." *Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 628 (1989). "[I]t is not the number of persons who could be injured by a drug-impaired worker that determines the constitutional validity

---

[1] *See also Chandler v. Miller*, 520 U.S. 305, 314 (1997); Knox Cnty., 158 F.3d at 380; *Int'l Union v. Winters*, 385 F.3d 1003, 1007 (6th Cir. 2004); *Anderson v. City of Taylor*, No. 04-74345, 2005 WL 1984438, at *5-6 (E.D. Mich. Aug. 11, 2005); *Am. Fed'n of State, Cnty. & Mun. Employees Council 79 v. Scott*, 717 F.3d 851, 880 (11th Cir. 2013) *cert. denied*, 134 S. Ct. 1877, 912 (U.S. 2014); *19 Solid Waste Dept. Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1072 (10th Cir. 1998).

of random drug testing.  Instead, the cases focus on the degree, severity and immediacy of the harm posed." *Smith v. Fresno Irrigation Dist.*, 72 Cal. App. 4th 147, 164, 84 Cal. Rptr. 2d 775 (1999).

Defendants claim that Plaintiffs' jobs are safety-sensitive as a matter of law because they drive 12-passenger vans transporting developmentally disabled adults.  (Doc. 12 at 10).  Defendants extensively detail both the breadth of positions that have been identified as safety-sensitive and the functions of the HSP and CSP positions that involve significant responsibility and/or potential for consequential mistake.  (*Id.* at 8-10).  However, classifying a job as safety-sensitive is a "fact-intensive" inquiry.  *Council 79*, 717 F.3d at 873.  The Court "cannot merely accept a state's invocation of special needs, but rather must engage in a context-specific inquiry, examining closely the interests advanced by the state." *Winters*, 385 F.3d at 1009; *see also National Federation of Federal Employees-IAM v. Vilsack*, 681 F.3d 483, 489 (C.A.D.C. 2012).  Where safety is a defendant's justification, it must be "genuinely in jeopardy." *Council 79*, 717 F.3d at 876. To demonstrate that Plaintiffs "occupy safety-sensitive positions, the Board must demonstrate a 'clear, direct nexus … between the nature of the employee's duty and the nature of the feared violation." *Knox Cnty.*, 158 F.3d at 378 (*citing Georgia Association of Educators v. Harris*, 749 F.Supp. 1110, 1115 (N.D.Ga.1990)).

Defendants make a compelling theoretical and rhetorical argument for the classification of the HSP and CSP jobs as safety-sensitive.  However, as Defendants' memoranda cite no precedent specifically establishing positions involving the

7

transportation of disabled adults as safety-sensitive, and given that the required inquiry is therefore a factual one, the Court cannot find that the HSP and CSP jobs are safety-sensitive as a matter of law. No judicial precedent or federal or state statute or rule requires suspicionless random alcohol and drug testing of these employees or establishes that the HSP and CSP jobs are "safety-sensitive." Record evidence upon which to make that determination is therefore required.

Consequently, Plaintiffs have adequately stated a 42 U.S.C. § 1983 claim based on the Fourth Amendment.

### 2. Qualified Immunity

Government officials performing discretionary functions are generally immune from liability for civil damages so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Municipal defendants are not entitled to qualified immunity. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980). Whether an individual defendant is entitled to qualified immunity is a question to be resolved at the earliest possible stage of litigation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Resolving the issue is a two-part inquiry. First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right? Second, if a violation could be made on a favorable view of the parties' submissions, was the right clearly established? *Id.* In other words, the basic test for qualified immunity is whether, at the time of the challenged conduct, "'[t]he contours

8

of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' We do not require a case directly on point, but existing precedent must have placed statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (*citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

This analysis uses an objective reasonableness standard. The objective reasonableness standard examines whether the defendant reasonably could have thought his or her actions were consistent with the rights that the plaintiff claims were violated. If the government official acted in a manner reasonably consistent with the plaintiff's rights, qualified immunity applies.

The Amended Complaint does not establish that every reasonable official in Defendant Guliano's position would have known that her conduct violated Plaintiffs' Fourth Amendment rights. In fact, although Plaintiffs have met the requirements to adequately state a Fourth Amendment claim at this early stage in the litigation, the significant precedent and argument provided by Defendants suggests a very real possibility that the HSP and CSP jobs are, in fact, safety-sensitive. Defendants have pointed to myriad cases in which similar or comparable jobs to the HSP and CSP jobs have been classified as such. Even at this early stage, it is beyond doubt that a reasonable official could have considered the HSP and CSP jobs to be safety sensitive positions and thus believed that subjecting Plaintiffs to suspicionless testing would not be a constitutional violation.

9

Consequently, Defendant Guliano is entitled to qualified immunity as to Count I.

**B.     Count II**

    **1.     Merits**

With regard to Plaintiffs' state law claims, and once arguments predicated on the dismissal of Count I are disregarded, Defendants vaguely argue only that the Amended Complaint does not allege facts showing that any Plaintiffs have suffered reputational damage or unlawful confinement or have been wrongfully discharged, and thus that if these claims are not dismissed, this Court would be doing nothing more than issuing an advisory opinion.

However, Plaintiffs specifically allege that the testing procedures they are currently being subjected to constitute "assault and/or battery, an invasion of privacy, [and] an unlawful confinement,"  They allege "defamation or unnecessary reputational damage" and "wrongful discharge/discipline," and have provided facts indicating that at least one employee has already been placed on administrative leave pursuant to a positive drug test. (Doc. 10 at ¶ 64).

Consequently, Plaintiffs have adequately stated their state law claims at this early stage.

    **2.     State Law Immunity**

        **a.     Defendant BCDD**

Ohio Revised Code at Chapter 2744 sets forth the appropriate analysis for determining whether governmental immunity applies to a political subdivision.  *Greene*

*Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000). A court must determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or proprietary function. *Id.*; O.R.C. § 2744.02(A)(1). Under O.R.C. § 2744.02(A)(1), a political subdivision is generally "not liable for damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision … in connection with a governmental or proprietary function." O.R.C. § 2744.09 states that "[t]his chapter does not apply to, and shall not be construed to apply to … (B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision; (C) Civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his employment…"

There are no allegations that Defendant BCDD is not a political subdivision engaged in a governmental function. O.R.C. § 2744.09(B) & (C) remove immunity from the employer-Board where, as here, PGO and/or the employees sue the Board for claims (i) which arise out of and have a causal connection to the employment relationship or (ii) which are relative to wages, hours, conditions, or other terms of employment. *Sampson v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, syllabus. Conditions of employment include "the conditions an employee must meet to maintain employment…" *Fabian v. City of Steubenville*, 7th Dist. No. 00 JE

11

33, 2001-Ohio-3522, at *4. Alcohol and drug testing is required by Board Policy and is a condition of maintaining employment. (Doc. 10 at ¶ 53). Plaintiffs allege that all the conduct forming the basis for their tort claims occurred pursuant to Defendant BCDD's suspicionless testing employment policy. (*Id.* at ¶ 89-90).

Consequently, Defendant BCDD is not entitled to state law immunity.

**b.     Defendant Guliano**

Whether a political subdivision employee is entitled to immunity is a question of law. *See, e.g., Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992). The exceptions in O.R.C. § 2744.09(B) & (C) that expose Defendant BCDD to liability do not apply to Defendant Guliano, as they refer to actions "against the political subdivision." Employees are generally entitled to immunity unless one of the exceptions in O.R.C. § 2744.03(A)(6)(a) and (b) apply. In such a case, a court must determine whether an individual acted manifestly outside the scope of her employment or whether she acted with malicious purpose, in bad faith, or in a wanton or reckless manner. *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006–Ohio–6208, 857 N.E.2d 573, ¶ 14; *Fabrey v. McDonald Police Dept*., 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994). Here, there are no factual allegations whatsoever that Defendant Guliano acted outside the scope of her employment or with malicious purpose, in bad faith, or in a wanton or reckless manner.

Consequently, Defendant Guliano is entitled to State law immunity as to Count II.

## IV. CONCLUSION

Accordingly, based on the foregoing, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 12) is hereby **GRANTED IN PART AND DENIED IN PART**.[2]  Specifically:

1. As to Defendant BCDD, Defendants' motion is **DENIED**.

2. As to Defendant Guliano, Defendants' motion is **GRANTED** and Plaintiffs' claims against Defendant Guliano are **DISMISSED**.

**IT IS SO ORDERED.**

Date:  9/24/14                                         *s/ Timothy S. Black*
                                                         Timothy S. Black
                                                         United States District Judge

---

[2]  Defendants' Motion to Dismiss the original Complaint (Doc. 9) is **DENIED** as **MOOT** pursuant to Plaintiffs' filing of the Amended Complaint.  (Doc. 10).  Given that "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto … so long as they are referred to in the Complaint and are central to the claims therein," *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted), Defendants' Motion to Strike Portions of Plaintiffs' Memorandum in Opposition is **GRANTED** and the portions of Plaintiff's Memorandum in Opposition containing factual and legal assertions outside of the record are **STRICKEN**.  (*See* Doc. 16 at 2-3).  Finally, as Plaintiffs had notice of Defendants' arguments for dismissal once Defendants' Motion to Dismiss the original Complaint (Doc. 9) was filed, Plaintiffs' Motion for Leave to Amend the First Amended Complaint (Doc. 18 at 5-6) is **DENIED** as dilatory.

13